IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
WINCHESTER DIVISION

| | |
|---|---|
| **JOHN WASIEJKO**  *Plaintiff*  v.  **CITY OF TULLAHOMA, MICHAEL WILDER, ROBERT ZACHARY WEAVER, and RUSSELL DODSON**  *Defendants.* | Case No. 4:25-cv-00064  **JURY DEMANDED** |

## COMPLAINT

Comes now the Plaintiff, JOHN WASIEJKO and states the following for his Complaint against the Defendants:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff Wasiejko by the Fourth Amendment to the Constitution of the United States of America.

3. Plaintiff Wasiejko asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff Wasiejko by the Constitution or laws of the United

States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing Plaintiffs in actions brought under 42 U.S.C. § 1983.

4. Each of Plaintiff Wasiejko's claims arise under the Fourth Amendment to the United States Constitution, made applicable to the states and state actors through the Fourteenth Amendment to the United States Constitution.

5. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

6. Plaintiff John Wasiejko is an adult resident of Tullahoma County, Tennessee.

7. Defendant City of Tullahoma is a municipal government entity organized under the laws of the State of Tennessee and is the employer of Defendants Dodson, Wilder, and Weaver.

8. Defendant Michael Wilder was, at all times relevant to this complaint, an officer of the City of Tullahoma Police Department. He is sued in his individual capacity.

9. Defendant Robert Zachary Weaver was, at all times relevant to this complaint, an officer of the City of Tullahoma Police Department. He is sued in his individual capacity.

10. Defendant Russell Dodson was, at all times relevant to this complaint, an officer of the City of Tullahoma Police Department. He is sued in her individual capacity.

## FACTUAL ALLEGATIONS

11. Plaintiff John Wasieko is a fifty-six (56) year old resident of Tullahoma Tennessee, and a former law enforcement officer.

12. On January 10, 2025, Plaintiff Wasiejko found himself engaged in a verbal argument with his girlfriend, Ms. Loren Cain.

13. Seeking to de-escalate the situation, Plaintiff Wasiejko went into his office to prevent further engagement in the confrontation.

14. Plaintiff Wasiejko closed the office door and refused to speak further with Ms. Cain.

15. Ms. Cain became agitated that Plaintiff Wasiejko would not continue the argument.

16. In response, Ms. Cain took an extreme measure and called 911.

17. Upon information and belief, Ms. Cain told the dispatcher that Plaintiff Wasiejko was threatening to harm himself with a firearm, even though Plaintiff Wasiejko had made no such statements.

18. Plaintiff Wasiejko took the phone and informed the 911 dispatcher that there were no firearms and no threat to himself or anyone else existed.

19. The dispatcher told Plaintiff Wasiejko that officers would still be dispatched to perform a welfare check.

20. Plaintiff Wasiejko waited calmly for law enforcement to arrive.

21. At approximately 9:30 p.m., Defendant Wilder, Defendant Weaver, and Defendant Dodson arrived at Plaintiff Wasiejko's residence.

22. Plaintiff Wasiejko was unarmed and wearing only a bathrobe at the time the officers arrived.

23. Plaintiff Wasiejko walked onto his front porch to meet the officer.

24. Plaintiff Wasiejko immediately identified himself to the officers and informed them that there was no emergency.

25. When the officers arrived, the residence and surrounding area were entirely calm and quiet. There were no sounds of distress, no shouting, and no commotion of any kind.

26. The home appeared orderly, with no signs of violence, disorder, or emergency.

27. No individual inside or outside the residence appeared injured, intoxicated, or in need of immediate medical attention.

28. The officers did not hear any request for help or observe any circumstance suggesting an imminent risk to anyone's safety.

29. Plaintiff Wasiejko observed multiple patrol cars surrounding his residence.

30. Plaintiff Wasiejko noticed that at least one of the officers had a rifle drawn.

31. Plaintiff Wasiejko remained on the porch with his hands visible at all times.

32. Defendant Wilder walked onto Plaintiff Wasiejko's front porch.

33. As Defendant Wilder approached Plaintiff Wasiejko's front porch, Plaintiff Wasiejko stated, "You are not welcomed in my home."

34. Defendant Wilder explained that someone called 911 and that they needed

to speak to Ms. Cain.

35. Plaintiff Wasiejko exhibited no suspicious or threatening behavior and his appearance – in a bathrobe – presented no reasonable basis to consider him dangerous to himself or others.

36. Through the glass storm door, Ms. Cain was plainly visible sitting upright on the couch inside the living room.

37. She appeared calm, uninjured, and free to move about the residence.

38. She did not call out to the officers, gesture for help, or display any indication of fear or distress.

39. Her visible demeanor and posture would have led any reasonable officer to conclude that no emergency existed and that all persons inside were safe.

40. Plaintiff Wasiejko told the officers, "You may talk to her, I'm going to send her out here."

41. Plaintiff Wasiejko expressly informed the officers that there was no danger. He was composed and visibly unarmed, and Ms. Cain could freely speak with them if she wished.

42. He took no action that could reasonably be construed as dangerous, threatening, or erratic.

43. Plaintiff Wasiejko's statements to the Defendant Officers were consistent with his prior communication to the 911 dispatcher that there were no firearms in use and that he had no suicidal intent.

44. Defendant Wilder told Plaintiff Wasiejko to stay where he was, and that

the officers would go inside to speak with her.

45. Plaintiff Wasiejko retorted, "No, you stay right here," and turned his body toward the front door to enter the residence.

46. Plaintiff Wasiejko's refusal to permit entry was a lawful exercise of his Fourth Amendment right to be secure in his home.

47. Defendant Wilder suddenly and without justification seized Plaintiff Wasiejko by the arm.

48. Immediately thereafter, Defendants Weaver and Dodson joined in the physical seizure, each grabbing Plaintiff Wasiejko without any justification.

49. Plaintiff Wasiejko demanded the officers let him go and told them to stop touching him.

50. Instead of releasing Plaintiff Wasiejko from the unlawful seizure of his person, Defendants Wilder, Weaver, and Dodson violently forced Plaintiff Wasiejko to the ground, slamming his body onto the concrete porch. Plaintiff Wasiejko's head struck the concrete, and he felt a tearing pain in his right knee.

51. While Plaintiff Wasiejko was already restrained and submitting to control of Defendant Wilder on the ground, Defendant Dodson deployed his Taser and shocked Plaintiff Wasiejko.

52. Defendant Wilder gave Plaintiff Wasiejko multiple commands to place his hands behind his back.

53. Plaintiff Wasiejko was unable to place his hands behind his back due to a recent shoulder replacement surgery.

54. Plaintiff Wasiejko was, at this point, completely immobilized. His bathrobe had become displaced and his naked body from the waist down was pressed against the concrete porch. He posed no threat to the officers. However, Plaintiff Wasiejko could not put his right hand behind his back as the officers commanded.

55. Approximately twenty (20) seconds after Defendant Dodson tased Plaintiff Wasiejko, and while Defendant Wilder was on top of Plaintiff Wasiejko with his knee driven into Plaintiff Wasiejko's back, Defendant Weaver tased Plaintiff Wasiejko in the buttocks.

56. Plaintiff Wasiejko was finally able to articulate to the officers, "You don't understand, I have a problem with my fucking shoulder!"

57. Defendant Wilder then handcuffed Plaintiff Wasiejko.

58. Ms. Cain then exited the residence, and Defendant Wilder asked her, "Who called 911? What happened?"

59. Defendant Wilder asked Ms. Cain, "Did he have a handgun on him?"

60. Ms. Cain replied, "No."

61. Defendants Wilder and Weaver attempted to help Plaintiff Wasiejko stand up.

62. Immediately upon standing, Plaintiff Wasiejko's knee buckled under his weight, causing him to scream in pain.

63. Defendants immediately uncuffed Plaintiff Wasiejko and sat him down on a chair on the porch.

64. Plaintiff Wasiejko was assisted into an ambulance and taken to Vanderbilt

Hospital in Tullahoma.

65. Once in the emergency room, nurses attempted to collect blood and urine samples from Plaintiff Wasiejko.

66. Plaintiff Wasiejko refused; however, the ER doctor informed him that he would either provide the samples or go to jail.

67. The ER doctor also informed Plaintiff Wasiejko that he would be committed and evaluated for his mental health.

68. Plaintiff Wasiejko was then sedated. His leg was set and casted to treat several fractures.

69. Ultimately, Plaintiff Wasiejko suffered three fractures in his leg, two meniscus tears, and a complete ACL tear requiring replacement.

70. After surgery, Plaintiff Wasiejko was held under 24-hour watch for approximately thirty-six (36) hours before being transported to Parkridge Mental Hospital.

71. Plaintiff Wasiejko was finally released from Parkridge Mental Hospital on or about January 16, 2025.

72. Later that same evening, at approximately 6:22 p.m., officers returned to his residence with a warrant for his arrest for resisting arrest.

73. Plaintiff Wasiejko was taken to the Coffee County Jail, where he was processed and booked.

74. Plaintiff Wasiejko was released from Coffee County Jail shortly after midnight.

75. All criminal charges against Plaintiff Wasiejko were dismissed.

76. The call that prompted Defendants' response was dispatched solely as a "welfare check," not as a criminal investigation or domestic disturbance.

77. At no time did Defendants possess a warrant, probable cause, or reasonable suspicion of a crime.

78. By forcibly detaining, tasing, and handcuffing Plaintiff Wasiejko, Defendants transformed a non-criminal welfare check into a violent seizure wholly outside the scope of legitimate community-caretaking activity.

79. Plaintiff Wasiejko's arrest is captured on police body camera recordings, one of which is manually filed as Exhibit 1 to this Complaint.

## MUNICIPAL LIABILITY ALLEGATIONS

80. Defendant City of Tullahoma, through its Police Department, maintained official policies, customs, and practices that were the moving force behind the constitutional violations described herein. These include:

   a. A pattern, practice, and custom of failing to train, supervise, and discipline officers regarding the constitutional limits of force during non-criminal welfare checks, including situations involving individuals experiencing emotional distress or disability-related behaviors.

   b. The City knew or should have known that its officers routinely respond to welfare and mental-health related calls, yet failed to provide adequate training on de-escalation and crisis-intervention techniques.

   c. The risk of constitutional violations arising from such failures was

obvious and longstanding. Tullahoma Police Department officers receive minimal instruction on interacting with individuals during welfare checks and no meaningful operational guidance on modifying tactics when no crime is suspected and no threat exists.

d. The Department maintained a policy, practice, and/or custom of treating dispatch "flags" or information indicating potential mental-health concerns as tactical danger indicators justifying heightened use of force, rather than as notices requiring caution, communication, and accommodation.

e. These indicators were routinely misinterpreted as justification for preemptive physical escalation, resulting in a predictable pattern of excessive force against individuals experiencing medical or emotional crises, including Plaintiff Wasiejko.

f. The City of Tullahoma and its policymakers were aware of the need for specific training and policies governing welfare-check responses and disability-related interactions but consciously disregarded that need, despite the foreseeable risk of serious injury.

g. These policies, customs, and failures collectively demonstrate a deliberate indifference to the constitutional rights of individuals encountered during welfare checks, in violation of the Fourth Amendment, and give rise to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

h. As a direct and foreseeable result of the City of Tullahoma's failure to implement appropriate training, supervision, and dispatch-related safeguards, Plaintiff Wasiejko was subjected to excessive and unconstitutional force, resulting in significant physical injury, multiple surgeries, and lasting impairment.

## DAMAGES

81. As a direct and proximate result of the Defendants' conduct, Plaintiff Wasiejko has suffered and continues to suffer the following injuries and losses:

- Physical pain and injury, including damage to his leg, shoulder, and head;
- Emotional distress and mental anguish;
- Post-traumatic stress disorder;
- Humiliation.

82. Plaintiff Wasiejko further seeks punitive damages against Defendants Weaver, Wilder, and Dodson for their intentional and malicious misconduct, as well as for acting with deliberate indifference to Plaintiff Wasiejko's constitutional rights.

### CLAIM I – UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983
### (All Defendants)

83. Defendants Wilder, Weaver, and Dodson, acting under color of state law, unlawfully seized Plaintiff Wasiejko by physically grabbing and restraining him without probable cause, reasonable suspicion, or any basis to believe that exigent circumstances existed to justify the seizure of Plaintiff Wasiejko.

84. The seizure was objectively unreasonable under the totality of the circumstances, which include:

   a. That Plaintiff Wasiejko was not being investigated for any criminal offense;

   b. That Plaintiff Wasiejko was not being arrested for any criminal offense nor was he attempting to evade an arrest;

   c. That Defendants were on the scene for a welfare check only;

   d. That Plaintiff Wasiejko did not pose any immediate threat to the safety of the officers or others;

   e. That Plaintiff Wasiejko stood unarmed, calm, and cooperative on his own porch when Defendants abruptly seized him by the arm and restricted his movement;

   f. That no warrant, exigent circumstance, or consent justified Defendants' physical detention of Plaintiff Wasiejko at that moment;

85. The City of Tullahoma is liable for the constitutional violations inflicted by Defendants Wilder, Weaver, and Dodson because its policies, practices, and customs described supra were the moving force behind the constitutional violations.

### CLAIM II – EXCESSIVE FORCE (SLAMMING TAKEDOWN) IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983
### (All Defendants)

86. Defendants Wilder, Weaver, and Dodson, acting under color of state law, used excessive and unreasonable force against Plaintiff Wasiejko by forcibly throwing him onto the concrete porch immediately following the unlawful seizure.

87. The force used was objectively unreasonable under the totality of the circumstances, which include:

   a. That Plaintiff Wasiejko was not being investigated for any criminal offense;

   b. That Plaintiff Wasiejko was not being arrested for any criminal offense nor was he attempting to evade an arrest;

   c. That Defendants were on the scene for a welfare check only;

   d. That Plaintiff Wasiejko did not pose any immediate threat to the safety of the officers or others;

   e. That Plaintiff Wasiejko was standing calmly, unarmed, and compliant when Defendants violently forced him to the ground;

   f. That Plaintiff Wasiejko struck his head on the concrete and suffered a torn knee, multiple fractures, and related injuries as a direct result of the takedown;

88. The City of Tullahoma is liable for the constitutional violations inflicted by Defendants Wilder, Weaver, and Dodson because its policies, practices, and customs described supra were the moving force behind the constitutional violations.

### CLAIM III – EXCESSIVE FORCE (FIRST TASER DEPLOYMENT) IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983
### (Defendant Dodson)

89. Defendant Dodson, acting under color of state law, used excessive and unreasonable force against Plaintiff Wasiejko by deploying a Taser against him while Plaintiff Wasiejko was already on the ground, restrained, and under the control of the

officers.

90. The force used was objectively unreasonable under the totality of the circumstances, which include:

   a. That Plaintiff Wasiejko was not being investigated for any criminal offense;

   b. That Plaintiff Wasiejko was not being arrested for any criminal offense nor was he attempting to evade an arrest;

   c. That Defendants were on the scene for a welfare check only;

   d. That Plaintiff Wasiejko did not pose any immediate threat to the safety of the officers or others;

   e. That Plaintiff Wasiejko was lying prone on the porch, immobilized, and unable to resist or flee;

   f. That Defendant Dodson discharged the Taser into Plaintiff Wasiejko's body without any lawful justification or necessity for officer safety;

91. The City of Tullahoma is liable for the constitutional violations inflicted by Defendant Dodson because its policies, practices, and customs described supra were the moving force behind the constitutional violations.

### CLAIM IV – EXCESSIVE FORCE (SECOND TASER DEPLOYMENT) IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983
### (Defendant Weaver)

92. Defendant Weaver, acting under color of state law, used excessive and unreasonable force against Plaintiff Wasiejko by deploying a Taser into Plaintiff Wasiejko's buttocks while Plaintiff Wasiejko was already pinned to the ground and

entirely subdued.

93. The force used was objectively unreasonable under the totality of the circumstances, which include:

   a. That Plaintiff Wasiejko was not being investigated for any criminal offense;

   b. That Plaintiff Wasiejko was not being arrested for any criminal offense nor was he attempting to evade an arrest;

   c. That Defendants were on the scene for a welfare check only;

   d. That Plaintiff Wasiejko did not pose any immediate threat to the safety of the officers or others;

   e. That Plaintiff Wasiejko was already immobilized, prone, and incapable of resistance when Defendant Weaver discharged the Taser approximately twenty seconds after the first deployment;

   f. That the second Taser served no legitimate law enforcement purpose and caused unnecessary pain and physical injury;

94. The City of Tullahoma is liable for the constitutional violations inflicted by Defendant Weaver because its policies, practices, and customs described supra were the moving force behind the constitutional violations.

# CLAIM V – MALICOUS PROSECUTION IN VIOLATION OF THE FOURTH AMENDMENT
## 42 U.S.C. § 1983
### (Defendant Wilder)

95. On January 12, 2025, Defendant Wilder falsely charged Plaintiff Wasiejko with the Tennessee state criminal offense of resisting stop, halt, frisk arrest.

96. The charge deprived Plaintiff Wasiejko of his liberty by:

    a. Causing him to be arrested and transported to jail

    b. Causing him to be jailed for several hours;

    c. Causing him to be subject to the conditions of the Pretrial Release program.

    d. Causing him to have to appear in court and defend the false charges on several separate court dates.

97. Defendant was operating under the color of state law when they initiated the false charges against Plaintiff Wasiejko.

98. Defendant participated in the decision to charge Plaintiff Wasiejko without probable cause that Plaintiff Wasiejko Thomas was guilty of any offense.

99. Defendants recklessly or intentionally omitted material exculpatory information form the affidavit of probable cause, including the fact that Defendant Wasiejko never actively resisted, and that officers were responding to a welfare check when called to the scene.

100. Defendant intentionally or recklessly included or excluded false information in the affidavit of probable cause.

# REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff Wasiejko John Wasiejko requests:

I. That process be issued and that each Defendant be required to answer or otherwise respond within the time provided by the Federal Rules of Civil Procedure

II. A jury be empaneled to try this case;

III. That Plaintiff Wasiejko be awarded nominal damages;

IV. That Plaintiff Wasiejko be awarded compensatory damages;

V. That Plaintiff Wasiejko be awarded punitive damages against Defendants Wilder, Weaver, and Dodson in an amount to be determined by a jury for their intentional violations of his federally protected constitutional rights;

VI. That Plaintiff Wasiejko be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VII. For pre- and post-judgment interest on all damages awarded;

VIII. For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/ Wesley Ben Clark*
Wesley Ben Clark, #32611
Frank Ross Brazil #34586
BRAZIL CLARK, PLLC
760 E Argyle Ave.
Nashville, TN 37203
615-730-8619
wesley@brazilclark.com
frank@brazilclark.com